We'll call the first case, 18-25-73, Kaufman v. Margaret Maclean. Would the attorneys that are going to present oral arguments step up and identify yourselves for the record? Okay. Mr. Kaufman? I'm Catherine Najo, counsel for Defendant Apoie, Ms. Maclean. What is your name again? Catherine Najo, Your Honor. Would you spell your last name, Piafran, please? It's N-A-N-C-E-A-D-R-O. Correct. Najo. Najo. All right. All right. So each of you will have about 15 minutes to present oral argument, and from that, Mr. Kaufman, you may save up some time for rebuttal. All right? Okay, Ms. Najo, you may be seated. Mr. Kaufman? Thank you. Good morning, Your Honors. Good morning. I'm Grant Kaufman, plaintiff appellant. In this action, I'm asserting a breach of contract action against Defendant Apoie, Margaret Maclean, related to an agreement to purchase a condominium unit at 161 East Chicago Avenue in Chicago. The complaint alleges the defendant breached the contract by failing to pay earnest money due at the end of the attorney review period provided for in the contract, and was therefore liable for $182,500 in earnest money. Judge McGrath of the Circuit Court of Cook County dismissed the complaint with prejudice pursuant to Section 2-619A9 of the Illinois Code of Civil Procedure. I'm seeking that this Court reverse the judgment of the trial court. What is the final contract that you believe was executed between the parties as far as the appendix goes? Can you tell us which page it's on? Is it at A61? Or no? No, that couldn't be because that still has the 1-800-000 purchase price. So it's not that one. Because at some point you suggested it changed, didn't you? Yeah, the purchase price was 1-825-000. I'm not sure I have the appendix. I see it now. It's A66 in the appendix. All right. Okay. And that's – is that dated a different date? It's dated on – it was executed on February 28, 2019. Okay. But it has a thing in there that says it won't be accepted. Contract shall be of no force or effect if not accepted by seller on or before 2-26-18. Right. So that's an incorrect date, isn't it? Right. All right. Okay. Is there one that has the revisions? That's the final contract. The final final. Right. All right. And what about this – so this 5,000 was added, wasn't it? 5,000 was an initial earnest money. But who added that? That was added. Wasn't that added by Ms. McLean? I can't tell who added it. Well, doesn't the record indicate that? All I have is the final contract. I'm not sure. Well, your initials don't appear there, do they? Those are her initials. Those are her initials. When did you – when did you – I must have revised that and she initialed it. Well, what if she revised it and you didn't initial it? What would that mean? Again, possibly evidence that the contract wasn't valid, but – Okay. I'm just asking questions. Right. All right. So is it your position you're entitled to – you just want it sent back for questions of fact. Is that right? You just want it sent back because you believe there's questions of fact. Right. The issue is the judge dismissed the case for 2-6-19 and we believe it was improperly dismissed. All right. That's the central issue here. Yes. And you believe there's questions of fact. Right. All right. But not as far as the execution, but other things. Right. Right. And it's not even necessarily that there are questions of facts. The issue is, as a question of law, was the termination effective? That's really the crux of the issue as I see it. Okay. But doesn't that turn on facts, really? Yes. Yes. All right. Okay. Counsel, I have a question. With reference to the attorney modification clause that you referred to, when the contract was entered into, was it entered into with both parties having attorneys? No. Okay. And then when the modifications were going back and forth, it was between yourself and the real estate agent. Exactly. All right. And so during the beginning and during the process of the modification, there was no other attorney involved, just yourself. Right? Right. But yet you're saying that the attorney modification clause is applicable, but didn't you kind of waive that already? Because during the modification process, since the other side didn't have an attorney. No. I mean, my position is the contract was executed on February 28th on, if I can continue the facts, I think I'll be comfortable. Sure. Yeah. Yeah. So on March 1st, there was a crucial text message exchange. Well, my question doesn't get to the first. Okay. My question is before the first, because you entered into the contract, right? And then during that time on the 28th, there was a lot of emails going back and forth in terms of modifications. Right. Right? But at the time when those modifications were taking place, the other side wasn't represented by counsel. Right. Because those were generally business terms, and typically my understanding of a real estate transaction is the contract is executed, and at that point, then the parties have a five-day period, attorney modification period, at which point then they traditionally engage attorneys. The attorney has a chance to review it, explain the implications to the client, and then if the attorney is not satisfied, can modify or reject the contract at that point. So what was going on the 28th are not considered modifications? They were business term modifications, typically. Okay. So there were still modifications to the contract, right? Up until the 28th, they were purchase price, mainly about purchase price. That was the issue. Is that a big term, though? Yeah, it's very big. But it was agreed to on the 28th. The purchase price was agreed to, and my position is at the 28th, we had a contract. Right. I'm sorry. No, no. Why would you keep it listed if you had a contract? Well, the issue is I thought it was going to be terminated. They said I fully expected them to terminate the contract. So the text, if I can continue with the text message exchange, I think it will be clear why I didn't. Okay. You were told that she's backing out. She wants to back out of the contract. And you said ugh. I said ugh, right. Yeah, ugh, like awful or something. Right. Yeah. Okay. And then at that point, she said. Get back to you with papers. We'll get back to you with papers. It was an agent. It was an agent. All right. So why did you keep listing it? Because I assumed she was going to terminate the contract. Wasn't that what happened at that very moment? No. No? You assumed it was a contract. And she said it was a contract. Realtor said she wanted to get back out of the contract. So when did it become a contract? On the 28th. No, but you just said you assumed it was going to be terminated. I assumed it was going to be terminated. Okay. By an attorney. That's the paperwork issue. Okay. So my question is you assumed it was going to be terminated, but you're saying it really wasn't terminated. Because I never got the paperwork. Then why did you list it? How could you list a property for sale that you believed had been executed upon as far as a purchase? Well, it was already listed. It wasn't. No, of course it was listed. Right. But why did you continue to list it for others to purchase if you thought it had been executed and then you subsequently wrote a letter saying you breached 14 days later? Right. Why? Yes. How can you list a property that's not for sale? Because I thought I was going to get the paperwork. It was a very simple issue. I thought I was going to get a one-page letter from an attorney saying we cancelled it. So you really weren't sure there was even a contract in place? No. I was sure there was a contract in place, but I thought it was going to be terminated. So if there was a contract in place, does the law permit you to continue to list the property? I can't say. All right. Well, that may be a question for you. How about a stopper? Do you think there's questions that they might argue? How would you defend against if they step up, as they argued in their brief, that you should be stopped because of the conduct following the February 28th date and March 14th? Well, two things. One, first and foremost, a stopper is, under Illinois law, a question of fact. So it was not appropriate to base a Section 2619 decision on equitable stopper. Right. I agree with you. I think that's fair. So that's – I mean, I can also argue the facts of the estoppel if you think that's – Sure. No, but generally, I think the law is clear that if someone is going to claim that a party should be stopped, it would usually be a question of fact, not something the court could just say is a matter of law. Thank you. All right. So getting back to my question about the attorney modification, if modifications are taking place before the contract is finalized, all right, before March 1st, all right, and there isn't an attorney on the other side, have you waived your argument with regards to the attorney modification clause? No, because what would typically happen is they would engage an attorney after the contract is signed. They'd engage an attorney. The attorney would review the contract, have the period of time to decide, and typically it waits until the last minute. Then the attorney, right before the expiration of the attorney approval period, sends a letter saying, I want to change X, Y, and Z of the contract, or I want to reject it. That's the way a typical real estate transaction occurs. So your view is that modifications that happen before the contract is signed, they don't need to have an attorney? That's not my position.  I'm just trying to understand your argument. Right. I'm just saying what typically happens in a real estate transaction is they don't engage an attorney. If it were me, I think it's important to have an attorney throughout. But they did not engage an attorney before, but they certainly needed to have one afterwards. This was a $1.8 million cash condo contract at which the purchaser then decides, I changed my mind after I signed it.  Okay, so you didn't waive the argument because you accepted the modifications before the contract was signed. To me, there's a bright line. The bright line is when the contract was signed. That's the most important thing. Before the 28th, there was no contract. At the 28th, there was a contract. At that point, after the 28th, there were only two ways to terminate the contract. Either through the inspection provision, if they hired an inspector, found things were wrong with the apartment, and then sent a letter saying we want out, or through attorney modification provision. One of their arguments is that she should have been able to terminate herself without the benefit of an attorney. Do you disagree? I do disagree with that because the whole point of attorney modification, the whole point of the attorney modification provisions, the Olympic Restaurant Corp. versus Bank of Wheaton said the whole point of attorney modification provisions are to encourage parties to get legal counsel. And as a public policy matter, we want to encourage people to get legal counsel. And allowing basically a five-day period for the buyer to say I changed my mind, which is exactly what happened here, is not really the intent of the attorney modification provision. It's to get legal counsel. Well, isn't it also to have someone be able to, if the attorney says she's out, she's out, it really doesn't matter about modifications. There's an absolute right for the lawyer to say. You're right. For any reason. Why shouldn't an individual have that same right? Well, if that's what the court decides that a non-attorney can, then you're basically throwing out what the court. The contract says. No. The contract says the lawyer. The contract says the lawyer very clearly, number one. And number two, public policy. No, I was looking for your response. The contract doesn't say, you know, you can terminate it. It says you can have five days to get a lawyer and they can terminate it for you. My question was just, you know, the case law, there is no case law about that. There's no case that says, you know, an individual should be able to exercise that same right. And there are other kinds of contexts where the legislature gives, like with the health club membership, I know the person has a right, or I believe maybe in another jurisdiction, but they have a right after 72 hours to change their mind for any reason. Sure. And they do that with mortgage. Right, right. And I mean, I understand the rationale for that, but that is not the case here. And in real estate transactions, you know, it's a tricky, negotiated thing. Parties get cold feet all the time. And the contract has been very, you know, negotiated and litigated over the years to assign various rights and responsibilities. Yeah. And we do need stability in the real estate job. There's many cases that say that. Right. You know, there should be stability. All right. I have one more question. With regards to the contract, under general provisions, notices, that provision is pretty specific in terms of notices could be by certified mail, e-mail, personal delivery, fax, commercial delivery. But there's no reference to texts. Your Honor, I am not, I don't believe this is a case of defective notice. I acknowledge the text message came through, I had noticed that she wanted to terminate the contract. Okay. My position is she did not terminate the contract. Okay. But I knew she wanted to because that text message, I got it. I acknowledge I got it. Okay. And much has been made of that. Like, this is a, and I believe Judge McGrath said she thought it was a defective notice case, and I don't believe it is. Okay. Let me ask you this. Let's assume we reverse the case. Where's your damages? The damages are spelled out in the contract. The damages are retaining the earnest money. It spells out very clearly. Show me. What are your damages? That's the whole point of keeping the earnest money is because the damages are hard to determine. If you want to know what my damages are, the apartment is still on the market two years later. Well, in the contract action, one of the elements of the contract action is damages. Where are your damages? But if she breached, Your Honor, with respect to Chief. Let's assume she breached the contract. Right. If she breached the contract, I still have this apartment for sale. So my damages are still ringing up. No, your damages are only in the event you sell it for less money. Plus my carrying costs. But you haven't sold it yet, so you don't have any damages. But I have carrying costs. And now the price of the apartment is marked less than her contract. So I guarantee you. That's pretty speculative, isn't it? No, it's not. I guarantee you I'm going to get less than $1,825,000. I guarantee that. May I ask you about the $5,000? Yes. That was supposed to be tendered to you within three days. Right. Why didn't you demand that immediately? Why did you wait for two weeks for all this? Because I thought the contract was going to be terminated. Very simply. How is there ever a validly executed contract? If you thought it was going to be terminated and her agent said she wants out, how is there a meeting of any kind of minds here? Okay. On the timeline, the bright timeline of the 28th. On the 28th, there was a meeting of the minds. There existed a contract. Okay. Period. Done. There's a contract on the 28th. After that, they had a period of time to be able to get out of the contract with an attorney approval period. Okay. They did not do that. What was the period of approval? Five days? I believe it was five days. All right. What about March 5th? Company goes. You don't demand the $5,000. You don't demand your escrow. And you wait until March 14th. Right. You're asking why? What is that period of time? And the property is listed. You're asking why? Yes. Because it went out of my mind, honestly. I thought on the 14th, I woke up and said, wait a second, I never got an attorney approval. Okay. All right. So you thought there was a breach and you appropriately addressed it with the letter? On the 14th. Okay. All right. All right. I understand your position. I believe you have enunciated very clearly that you believe there's questions of fact regarding this and that the court should not have dismissed it as a matter of law. Thank you. All right. All right. I just have a couple questions. Sure. Let me get the questions out. All right. You say that you have damages, but you have no damages now. You could have them in the future, but you have them not now. Is that right? No. I have had damages. Every time I pay a maintenance fee, which I wouldn't have had to pay otherwise, every time I have to pay a repair. Do you have a case that would support that? Do I have documents? No. Do you have a case, a citation to a case that would support your theory because you're paying maintenance and other expenses on the building that that's damages? Your Honor, my position is really the contract says the damages are the earnest money, and I don't have to go any further than that. That's my position. The contract does provide that if the contract, if the other party breaches, you actually get that extra money. Right. That's what it says in the contract. The contract says that, and the reason they say that is liquidated damages. Exactly, Your Honor. That's my position. I mean, but in fact, I have had a lot of damages. But you were requesting the 186. I'm requesting the 182.15, which is the specified earnest money in the contract. All right. You're going to have some time for rebuttal. Justice Gordon, do you have any other questions right now? All right. Thank you. So we'll hear from Pedro. Good morning, Your Honors. Are there questions of fact that remain here? No, Your Honor. I don't believe there are any material disputed facts at issue here. Did any attorney ever reject this contract? No, Your Honor. Is there any case that says that a person can be substituted for the attorney the way you're proposing? We don't have case law that says that, Your Honor. However, under the facts of this case, the presence or the absence of an attorney in the attorney modification period was immaterial to both parties. Everyone involved in this contract acted as if this contract had been canceled on March 1st, including Mr. Kaufman. The fact that an attorney had not delivered the text message did not change his conduct. Can I ask you a question? If your client wasn't represented by an attorney, right, and was entered into the contract, why did your client agree to a clause that would say attorney modification? Your Honor, as in many real estate transactions, the parties who are unrepresented by counsel are not necessarily sophisticated in the contract and may not have been entirely aware of all of the terms and provisions at issue prior to signing, which is, of course, the reason that attorney review clauses are frequently inserted. But now this becomes an issue, right? Well, the fact that there was no attorney engaged by my client does not mean that she shouldn't necessarily be afforded the same opportunity to review and consider the facts after signing. But in this case, Mr. Kaufman is claiming that on the 28th of February, you sent back an executed contract, didn't you, your client? Yes, Your Honor. My client's brokerage. What gives you the right to terminate the next day? Your Honor, this was within the context of the attorney review period, and we will know that we have issues. Let's assume for purposes of argument today that the law does not allow what you're suggesting, and there's case law that says that for this attorney modification provision, the attorney has the right to either modify or to cancel the contract. Now, that didn't occur. There was no attorney here. Correct, Your Honor. So what gives your client the right to terminate one day later, two days later, all within the period of the attorney modification? Your Honor, the conduct of the parties in this case indicates that the lack of an attorney was not material to them. Granted, it might not exist. What about Mr. Kaufman's claim that he was fully expecting, as Margaret McLean's agent indicated, we'll get the paperwork to you? There's no indication. Is that part of the text? That was part of the text, Your Honor. Does the contract allow for texting to terminate? It doesn't allow for texting to terminate, Your Honor, but Illinois law doesn't strictly construe notice provisions. If notice is received in some way that isn't allowed or by the technical terms of a contract, but it is actually received, the object of the notice provision has been satisfied. Well, doesn't this contract provide that the notice to cancel must be through the words of an attorney? It actually doesn't say that an attorney must strictly deliver it, but, yes, it does appear to contemplate that an attorney be involved in the termination. Is there any question that she didn't hire a lawyer? You're not suggesting now that some lawyer intervened that we don't know about, is there? I'm not, Your Honor, no. There's nothing, I believe, that indicates that she had an attorney who was involved in helping her reach the decision to cancel this contract. But that wasn't something that changed the conduct of the parties in this case. Had Mr. Kaufman had an issue with the fact that the termination was not delivered by an attorney, as he's now claiming, he could have raised that issue at any time between March 1st and March 14th. Instead, he conducted it himself. No, his conduct was not a question of facts. The actions he took are not as stated. He's here. He's indicated he was waiting for something from the other side. Well, he hasn't indicated previously that he expected a one-page letter from an attorney. He said he was waiting for paperwork that he thought would effectuate the termination. But it's not clear that that's what was going to be provided. Aren't you both really looking for equitable remedies? It is a legal remedy with an equitable flavor, Your Honor. Well, doesn't equity or the law really kind of have poor forfeitures where parties enter into a contract, the terms are in writing, and then a day later someone says, I want out? Yes, Your Honor. But the law also does not favor forfeitures for a non-material breach, which is akin to what we have here. The fact that Ms. McLean had the right under Illinois law to terminate during an attorney review period, had she hired an attorney clearly, that would have been the case. The fact that she didn't have an attorney convey that message would not be a material breach of the contract. And we're not saying that breach is at issue at this moment, but that's essentially the situation we have where Mr. Kaufman is seeking to have my client forfeit $182,500 for an attorney not conveying the message. I mean, you know, when we're done with this, I mean, the parties have never even attempted to solve this one together, have they? Does Your Honor mean in terms of settlement? Yes. I mean, why did you put in a $5,000 or why did she put in this $5,000 payment? There's no indication in the record as to why. But that was hers, right? I believe so, yes. When he suggested earlier, Mr. Kaufman, that he may have put that in, he was incorrect, wasn't he? I believe so, Your Honor, based on the – And that escrow amount of money, that's a pretty standard clause to put in, that if one party breaches at some point or wants to get out, then they have to pay the other side some money. It is part of the foreign contract, Your Honor. However – So it's very routine, and it's not unusual for it to be 10 percent of what this was a big – it's a relatively large amount of money for a lot of people, almost a $2 million contract for a condominium, right? Correct. Okay. So that provision about the 10 percent was in there for this kind of situation, wasn't it? The liquidated damages provision? Yes. I imagine that is why that's part of the foreign contract, Your Honor. However, liquidated damages provision, which we have other issues against but was not reached in the trial court, that provision contemplates that earnest either to the buyer if the seller breaches or the buyer – the seller, excuse me, could receive that if the buyer breaches. There was never any earnest money tendered in this case because the contract was terminated on March 1st, and Mr. Kauffman did not insist on any earnest money. Is it your position that on the 28th that there was an executed contract? We are conceding for purposes of this proceeding that there was a valid and executed contract. What do you mean you're conceding? We have issues of fact as to whether there was a valid, final, executed contract. Didn't you raise that in the trial court? We did, Your Honor. And why didn't you raise it here? Because Mr. Kauffman put in affidavit that controverted some issues of fact in that case, and we didn't pursue it in the trial court. So you didn't pursue it or you started it? We raised it in our motion to dismiss, but we withdrew that argument in our reply. Oh, I see. Okay. I misunderstood. So then I guess I'm asking you, is it your position, then, that this was a fully executed contract on February 28th? For purposes of today's argument, yes. There was a contract which was then terminated. Well, okay. So if we find that there's questions on that issue, we would have to send it back, wouldn't we? If there's a question as to whether there's a validly executed contract? Yes. If the court finds there's questions of fact as to that matter, then yes, that would have to be returned. But I don't think that's the question at issue here. All right. No, you don't. But then you've also argued that Mr. Kauffman should be stopped. Correct, Your Honor. Claiming what? He should be stopped from denying the termination of the contract. Okay. Doesn't that usually raise questions of fact? It does, Your Honor, but that doesn't mean that it's always something that must be decided at trial. If there are facts that are admitted, as there are in this case that are sufficient to form the basis of a stop or waiver, there's no reason that couldn't be decided on a 2619 motion as it was here. Yes. But except for the fact that there's really no case law that says when a party doesn't have a lawyer that they can cancel a contract without the lawyer, isn't there? There is no case that says that, Your Honor. But there are cases. Doesn't that raise questions of fact whether she should be entitled to this very kind of, you know, the equities of the matter? I believe it's still a legal question, Your Honor. It's not a factual question as to whether the termination was effective. No, I'm talking about the estoppel. Well, as for estoppel, the actions that constitute our claim for it are undisputed. Mr. Kauffman has admitted every factual allegation that we made with respect to whether he should be stopped from. What did he admit? He admitted that he received the text message. He admitted he did not delist the property. But admitting that he received the text message is not admitting that she had the right to terminate. It's not admitting that a lawyer was not present according to the contract terms. So I'm not sure that he's admitted to estoppel. Well, no, Your Honor. He wouldn't need to admit that she had the legal right to take a certain action. That's the question that we would be presenting to the court. It's more that he's admitted to the facts that underlie our claim as to why he should be stopped or why he should be held to a waived strict compliance with the attorney review clause. His inaction in this critical period indicated that he thought the contract had been terminated. Except for the fact that he was also led down a path by the agent that will get the papers to you. And maybe in the intervening time it was realized that, you know, there was a contract. And so you just can't say two days later, gee, I don't like this. Why aren't those questions? Why should we affirm something that is replete with factual questions? Your Honor, I think there are sufficient facts here as a legal matter to determine whether a claim such as waiver or estoppel is sufficient. What about the issue of notice? The contract doesn't allow for text messages. Why didn't that question affect whether this was even sufficient notice when the contract doesn't allow for that? Your Honor, Illinois law doesn't strictly construe notice provisions. Sure, but are we supposed to say as a matter of law that where a contract provides for a certain form of notice that when a different form of notice is given that we should say as a matter of law you win? On the notice question, I think it is clear that as a matter of law that notice was sufficient. Well, but what case do you cite that says you can text someone when the contract provides for e-mail? What are the other forms of notice? Certified mail. Certified mail. Certified mail facts. Right. What case law would suggest that we should suddenly say as a matter of law that a text message is sufficient when there's not a single case that even supports your position? There are cases that support our position that notice provisions aren't strictly construed. No, that, of course, I know that. That's a general principle. I'm saying what case says that factually in a situation where the notice is some other kind that the court can say as a matter of law that the notice was sufficient? That's even a factual question right there. To say notice is sufficient as a matter of law, you better have something or some case that says, sure, another form of notice is appropriate. Or isn't that something that should be decided by a fact finder? Your Honor, I believe the Bull v. George Coppolis and Rogers v. Balzi case and the Dennis v. McKenna, Dennis McKenna v. Smith, excuse me, case all indicate that notice could come in a form that is other than what is contemplated by the contract. All right. All right. We'll look at your case. And further, if we go to other equitable matters like the question of waiver, the determination as to whether the facts at issue here are sufficient to constitute waiver is a legal question that could be decided by the court. How do we determine waiver? What are the elements? Isn't that the relinquishment? Yes, Your Honor. The voluntary relinquishment of a known right. Yes, if there is an intentional relinquishment of a known right, which can be any intention other than to waive it. And Mr. Kaufman's conduct here indicated that he was not requiring strict compliance with the termination provision in the attorney review clause. He did not delist the property. He did not insist on Ms. McLean's compliance with the contract in the form of providing earnest money. He did not raise any objection to the form of termination until after her opportunity to, quote, unquote, properly terminate the contract had passed. Okay. But he stood before us today and his position was that he fully expected some kind of risk notification, which never arrived. And after the two-week period, he sent a letter saying that I believe you're in breach. How can we say as a matter of law that that is not a factual question? You're saying one thing representing your client. He's saying another representing himself. The actions that he took are not disputed. And he might have a different implication to attach to the actions. The actions themselves are not disputed. And you can have an implicit waiver by a conduct. And in the Wayland case, that was dismissed on a 2619 motion under similar facts where somebody's silence in holding someone to strict compliance with, I think in that case, an insurance clause, was held to relinquish their right to insist upon it. Was that case dismissed on a 619? It was, Your Honor. I believe it's Wayland versus Kmart. I have a question. So Mr. Kaufman's view is that the attorney modification clause that's in the contract doesn't really come into play until you have a signed contract. Yes, Your Honor. Is that your view as well? I believe that there are many factual issues at play with respect to whether there was a valid contract at the time. That's not something that we're pursuing right now. Because you agree there were modifications to the agreement before the contract was signed. And as we pointed out, there were some additional terms that appeared after the contract attached to the complaint. But his argument is that those modifications don't come into play with regards to the clause, that it doesn't become the clause doesn't come into play until after the contract is signed. I believe that the clause in the contract would not be effective until the Would we be giving some sort of equitable relief to your client if we said that the attorney provision should apply to individuals as well as attorneys? I believe limited to the facts of this case there is an equitable flavor to that argument. So shouldn't that be decided by the trial court since there's no case that really allows for that? It's something that is based on undisputed facts limited to this case. So I do believe it's proper for a legal question to be presented to this court. But I think you're missing the point here. I said, isn't that really sort of some kind of equity you're looking for? There is no case that says that you can use an attorney modification slash And, yes, we did raise equitable arguments in support of dismissing the complaint. I don't know that this is the appropriate place for that kind of relief. Well, Your Honor, the trial court did dismiss the complaint in view of all of the arguments that we made. Yes, I understand. And the real question here is whether or not there are questions of material fact that should have precluded the judge from determining as a matter of law that this contract was terminated by a text message. That's really the issue. Is there? I mean, that's what we have to decide. Are there any questions of material fact? You're saying there should be a stop, and you're also saying that there was no What's your primary argument? You gave up on the contract. The contract was terminated. Yes. Right. All right. Well, anything further you want to add? Here, I have a question. Isn't there a case out there that holds that an attorney modification clause, if you don't use an attorney, you waive the clause? I am not aware of a case that says that, Your Honor. Okay. Well, we'll hear from Mr. Kaufman briefly as a rebuttal. Thank you very much. Your Honor, I have nothing further, unless you have further questions for me. No. All right. We'll take the matter under advisement. While we do, the parties are certainly free to discuss it. All right. Court is adjourned.